Is Wartheiser v. Pocono Township? I was going to say the same thing about bankruptcy. I know. This is fascinating compared to bankruptcy. Paint drying is fascinating compared to bankruptcy. Some of my favorite cases have been bankruptcy cases. Delaware. It is Delaware. Good morning. May it please the Court, I am Cletus Lyman, law firm of Lyman and Ash, representing Plaintiff Appellant Harold Wartheiser. I request five minutes for rebuttal. Okay. I was trying to imagine the scenario that I think your position gets us to in the real world. I'm not that familiar with the way local legislators operate, but let's take U.S. Senate, which obviously doesn't apply here in 1983, but let's assume the same principles would work, and that there is a young senator who adamantly opposes the position of the majority leader. And the majority leader, rather than appointing that senator to a committee the senator wants, decides not only to not appoint him to that committee or her, but not appoint that senator to any committee. Maybe the senator gets the committee in charge of maintaining the streets. District of Columbia. Yeah, District of Columbia. Maintaining the streets of District of Columbia, particularly making sure that the horse manure is swept off the streets of District of Columbia. And the window office that the senator thought he or she had is replaced by not a corner office, but an office in the basement right next to the boiler. And the person goes to the majority leader and goes, what gives you? I wanted that committee, and my office doesn't have a window, I can't breathe down there. And the majority leader goes, well, next time you'll understand how you're going to vote on something that is a priority of mine and your colleagues. Under your scenario, there's a federal cause of action against that majority leader. No, Your Honor. Your Honor, the distinction here, as was noted by Judge Cowan in what I'll call Werkheiser 1, when this case was. Werkheiser 1, I read it in his warning. It seems to me it really hurts you, but go ahead. He noted that the position of roadmaster, which our client lost, is totally unrelated to the position of supervisor of Middle Smithfield Township. Does that help you or does that hurt you? If it's totally unrelated, then how does the retaliatory act, assuming it is retaliatory in motive, how does that prevent your client from exercising the things that he was elected to do, to do the things he was elected to do? It doesn't affect his. Well, the job that he lost was roadmaster. If I may, the United States Constitution expressly allows the Senate to conduct its business as it wishes, but there is also a freedom of speech in the United States Senate. The analogy that I would like to draw is a little closer to home. Your mind was far away. I grant that. In Delaware, it is permissible for a member of the legislature also to be a state employee. And according to a volume on Delaware government, in 1996, 56% of Delaware legislators were also state or local employees in Delaware. 35 of 62 legislators, 15 in education. Does it sound right that a Delaware teacher can lose her job because of speech offensive to some in her capacity as a legislator on issues of public concern? Do we want professors at the University of Delaware? Do we want persons who are performing jobs at the Motor Vehicles Bureau to be able to lose their jobs because of what they say in their capacity as legislators? Basically, most Delawareans want the members of the legislature to go work for someone else rather than the state. So maybe that's a good way to get it done. I knew you were in thin ice with two prominent Delawareans here. I knew you were in thin ice when you pulled Delaware as an example. Maybe it's better with Alaska. Well, there are 18 states, including New York, where I believe Your Honor is from, which also allow members of the legislature to hold state jobs. And there are a total of 18. Some of them have restrictions. Some states provide that if you held the job before you became a legislator. Delaware has a restriction that you can't be paid by the state twice for the same hour of work. But this is a good rule. Yeah. This case, by the way, is on all fours with a case that was decided by this court back in 1995 called Squires v. Bonser, which was distinguished in where Kaiser won because the precise issue had not been decided in this court, in Squires v. Bonser. Although, of course, in that case, the plaintiff prevailed in both the district court and in this court. The community has a situation where the roadmaster employee is criticizing decisions made by the government. He's doing it, in effect, as an employee. He's not doing it as a member of the board. No, he's doing it as a member of the board at publicly duly convened meetings of the board of supervisors. And the comments he's making has nothing to do with the roads department. It has to do with other levels of administration within the township. And the nature of the criticism was that a job which was previously done by one person was now being done or at least paid for three times. And that an individual who was doing the work, apparently, namely a newly created position of township manager, that the selection of this person was handled in an irregular way. The position wasn't posted. The gentleman came aboard as a kind of interim worker when the supervisor who was doing that work became ill. And he just stayed on without any normal posting of the position and job search for the best person. This had nothing to do with the roads department. It was a matter of concern to citizens who Mr. Werkheiser represents as a supervisor. His view of what he had to do to protect the fiscal viability and the fiscal integrity of the political body that he was responsible to. I guess you could make the same argument that a citizen would have done the same thing. It doesn't take an elected official to criticize the county or the government. Well, absolutely. As a supervisor, he's a legislator, he's a member of the governing body, and he is representing the views of the citizens as a whole. If you're right, how do we write an opinion that allows legislative bodies to function internally and lets the leaders of legislative bodies to discipline their members so that they can conform to party dogma or the insurer's dogma without running into this? How do we do that? Don't we open up a real Pandora's box? No, I don't think so. There is part of the First Amendment jurisprudence that goes back to the Mount Healthy decision, at least in 1975. Garcetti, though, cabins it. We didn't think Garcetti cut both ways here. But given the rationale of Garcetti, the First Amendment argument gets you so far. Same with Pickering. Well, the rationale of Garcetti is that you're talking about a respondeat superior, controlled employee. You're not talking about someone who is elected to represent the citizens on matters of public concern, whereas his job is to. . . That's my point. How do we circulate it? Because you're saying, it would seem to me when I first read this, that he was acting pursuant to his view of his responsibility to the legislative body, to the Board of Supervisors, to make certain that he discharged the governmental authority of the municipality in a certain way. But you can make the same argument, and you're doing it, that as a concerned citizen would have done exactly the same thing. So how do we separate the two? And that's my concern. How do we write an opinion that allows legislative entities to function without dragging the right to a 1983 claimant every time someone is disciplined for going against what the party sure wants? We're not talking about disciplining him in his capacity as supervisor. The point that I made in the brief is he could have been retaliated. . . I was going to say in five minutes. I was going to ask you a question. I don't know that you answered. If you could just make a mental note and then respond during your rebuttal. Sure. The job of Roadmaster. . . If you could just make a note and respond during your rebuttal. That would be helpful. Sure. You're going to use up all of your time on rebuttal telling me that you're about to sit down. So why don't we just end the argument and respond on rebuttal. I know you're chomping at the bit. All right. Is my time up? It is. Thank you. Thank you. May it please the Court. My name is Stephen Hoffman. I represent the appellees, Pocono Township and former supervisors Hess and Bangle. You have two positions here. And when the person in the position, acting position as a member of the board of supervisors, there's what, three members of the board, is that right? Yes. At that time, there's three members. And he criticizes the other two members. And then shortly thereafter, he's relieved of duty to start his employee job pertaining to the infrastructure of the township. I would say not shortly thereafter. It was about, there were two statements that are claiming one would have been in February, one would have been in July, and he was relieved in January of the following year. So how do we separate when one leads into the other as to a reason for termination or, in fact, they are separate and he is terminated for performance reasons? These aren't separate positions. And that's our point, is this is a hybrid position. The Pennsylvania legislature has broken down townships in Pennsylvania between the position of supervisor slash roadmaster. Because these are small townships, the Pennsylvania legislature, only in second-class townships, have allowed the elected supervisors to work both as the legislature and hold this job as a roadmaster. But they don't have to be a supervisor to be a roadmaster. They don't have to. The township could make the choice to hire somebody outside of the political realm. But as Judge Caputo pointed to in the opinion, Mr. Werkheiser received this position as roadmaster through the political process. He was elected in 2008, and he became majority, and he overthrew the minority member who at that point in time was the roadmaster. That person lost their job. Mr. Werkheiser obtained his job through the political process. Pennsylvania requires this position. This is not a position that continues from year to year, from day to day. It has to be re-approved every year at the reorganization meeting, which everybody... The roadmaster? The roadmaster is considered a political position in a second-class township. Interestingly, not in a first-class township, but in a second-class township. We don't have roadmasters in Philadelphia. The partner is what it is. Right, and that's because of the size of second-class townships. They tend to be smaller. They tend to be rural. They don't tend to have the resources to hire professional people to do these jobs. They tend to have the people who are closest on the ground, the supervisors, sort of doing a little bit of everything. So the fact is, as a supervisor, and his speech was made in his capacity as a supervisor. They're complaining that he criticized the majority members of the board. They shouldn't have hired this administrator. They should have opened it up for an RFP. They shouldn't have done certain things with the grant writing process. He criticizes them in open meetings in the legislative process. But they are open meetings. Couldn't a citizen have stood up and made the very same point? Sure. It's a valid point. It's a valid point, and a citizen could have made it. And a citizen, if they were retaliated against because they weren't making it in their official capacity, they could not have been retaliated against. If they'd made the decision because of a citizen stepping up, they're going to lose their job at the ski resort. That would have been a problem. They're going to lose the right to have their switch. It goes back to what Judge Ambo was trying to get at, and I was trying to get at. Also, how do we separate the two? How do we write an opinion that is not thought to be even a bad one? I don't think you can separate it. I think that the fact here, particularly when the speech is made, they're not arguing. And I went through it in his deposition. He didn't write letters to the editor. He didn't blog. He didn't go on the news. The speech here is entirely confined to his sitting at the podium at an open session of the governmental meeting in his official capacity as a township supervisor criticizing the – Do you have any doubt that had he not done it that way but written a letter to the editor, the same thing would have happened to him? He would have equally displeased the powers that be. But then there at least would have been an issue as to whether that letter to the editor was in his official capacity or as a private citizen. And that's my concern. How do we split that here? In this case, there is no way to split it because there is no dispute that everything he said, all of his speech, they're not making any argument that his speech was made at any other time other than in his official capacity. And if you go to Garcetti, Garcetti talks about the – He just confused time with capacity. He said that there's no dispute that it was made at any other time other than in his official capacity. Yes. That's not a measure of time. I can ask your opponent whether or not they are disputing whether or not this was made in his official capacity or as a citizen. Mr. Lyman was saying that it was made as a citizen. And he gave the example of the state employee who's also a – the state elected official was also a – but a state employee tends to have greater rights. A state employee does not have to appear in front of the school board every year and argue for their reappointment. A school teacher doesn't have to hope that their particular party gets reelected in November so that they will retain that position. The roadmaster has to appear in January of every year, and the majority has to say you're going to stay as roadmaster or we're going to give the roadmaster's job to a supporter or we're going to give it to the chairman of the board or we're going to give it to somebody else that we like what they have to say or we like the way they shovel snow or we like the way they pave or we just like them because they're, you know, important in our community. Isn't that brother-in-law? Absolutely. Because it's a political position. And because it's a political position, yeah, they can give it to their brother-in-law. That's one of Mr. Werkheiser's complaints in this case is Supervisor Bengel wasn't as qualified or wasn't qualified at all to hold the position. But there's plenty of roadmasters in Pennsylvania that aren't qualified for the position other than through politics. There's a lot of people that are employed in governmental jobs that get their jobs because of politics and sometimes nothing else. But that's the... It reflects I did not respond to that. Trust me. And present company absolutely excluded. So it's your position that we have to decide this case, we have to decide whether or not Garcetti applies to elected officials. No, I think, I believe Garcetti does apply. And if you find Garcetti applies to elected officials, particularly elected officials that perform a hybrid role, then Judge Caputo gets affirmed. But even if you think Garcetti doesn't apply to elected officials, it's still not constitutionally protected because, based on what this Court said in Werkheiser 1, as well as what the First Circuit, the Second Circuit, the Fifth Circuit, the Sixth Circuit, the Ninth Circuit has all said, is these ordinary political disputes, and sometimes they're nice and gentlemanly and sometimes they're bloodthirsty, but these political disputes do not receive constitutional protection. He is free, as a supervisor, to criticize Hess and Bengel till his term is up. He can do it every day at every meeting. And they can't do anything about his elected position. That is the line. He has to be allowed at the meetings, he has to be allowed to vote. Has the Roadmaster ever been, in the last 50, 60 years, anybody up or down the road? From the record, the only two, the only three people that have served as the Roadmaster in the record have all been supervisors. I can't say beyond those last three people were all supervisor. But there's... It goes back to 2008 when Mr. Werkheiser took the position, and the gentleman before him, I don't recall how long he held it, but he was in there for a, my recollection was a significant period of time. He was a supervisor, too. He was a supervisor, too. And worked for him as a supervisor. Yes. And that was something that Judge Caputo talked about in his opinion, is this notion that Mr. Werkheiser obtained this position through the political process, and you can't then complain that you're going to lose your position through the political process. He became the majority. He got rid of the Roadmaster that he didn't like. He became the minority. The majority got rid of him. That's politics. And this court in Zimmerlich talked about, you know, ultimately it's the ballot box that is the remedy for this dispute. And, in fact, that's what happened in Pocono Township. The citizens throughout the entire government, they changed from a second-class to a first-class township so that there would never be an issue again as to an elected official having a paid position with the township. So... First-class township? I thought Philadelphia was only a first-class township. Philadelphia is a first-class city. Pocono is a first-class township. And the distinction between first and second-class is first-class does not allow the elected officials to have a paid position. They're supposed to hire professionals. It was at the time of the retaliation. Subsequent to that, the first election after this occurred, the voters switched from a second-class, and it's purely a referendum. It can't be done by the supervisors themselves. The voters change from a second-class to a first-class township. So Mr. Wertheiser... The current roadmaster since January of 2013 is not a member of the board. Correct. In fact, it's no longer the roadmaster position is only recognized in the second-class township code. It is now a director of public works. It's more of along the lines of a professional like you would see in the city of Philadelphia in the streets department, somebody that reports to the township administrator. And that's also the issue here with regards to Mr. Wertheiser. When he's serving as the roadmaster, he's reporting to the majority of the board. Actually, he's reporting to himself as well, but he reports to each of the members of the board. And so when you look back at Garcetti, when Garcetti talks about both the official duties test, but they also talk about the harmony and the efficiency in speaking as one voice in terms of a governmental body, the fact is to have the roadmaster who is an employee criticizing the township administrator and criticizing the supervisors, that creates disharmony. And so they are allowed to put somebody in that position that they think will follow their lead, at least the majority members of the board. So that's why... I think reports to the board of supervisors might be the knife I was looking for to split the hair if it ends up going that way. In a situation where the person is performing a function that is taken away in that capacity, he or she is reporting to a political entity. That takes the schoolteacher and those folks out of the equation. Absolutely. And then also statutorily it's taken out of position because Pennsylvania recognizes that this position has to be reapproved in the political process every year. If you didn't expect to lose the job because of the political process, the legislature wouldn't have done that. They would have given the person tenure or they would have continued as a normal at-will employee, but they have to step up to the plate every year and be subjected to the political process and the whims of whoever at that point in time hold the majority seat in that legislative body. Thank you, Your Honors. Mr. Fleming, you had just one time. Thank you. If I can ask you if you have the kind of response to this job, if it is a hybrid job, and until they roughly became a first-class township with a political job held by a member of the board, Doesn't that make the assumption in our first four or five opinions make sense, that in effect it was not two jobs but really one job melded into another? It was two jobs. In your first opinion, this court said, Workhyser's job as roadmaster was wholly unrelated to his position as an elected official. Well, his duties may have been, but the way he got it in his administrative reporting chain, I'm not sure that's accurate. Mr. Workhyser had 13 years' experience as a senior worker on the road. This was not a patronage position. Patronage sometimes awards those who are worthy of getting the position. It doesn't always go to son-in-law or brother-in-law. Is it a situation, as Mr. Arthur represents, where he is reporting Rahi's roadmaster to the board of supervisors, and that on this record nobody has been a roadmaster who has not been a member of the board of supervisors? Is that accurate? I don't know that there is any record on that subject, Your Honor. A lot of what I just heard— Do you know anybody who—I'm not even sure you live in Towson, but to the extent you do know, do you know of any roadmasters who have not been members of the board of supervisors? I don't know who any of the roadmasters were prior to 2012, and I don't think it's on the record, I think. Maybe we could ask for a stipulation, a 28-J letter to that effect. Hopefully you can agree to that, but if not, then give us two separate letters. I can say this, that Mr. Werkheiser was elected each and every year from, I believe it was 20— That's Mr. Hoffman's point. Every year he has to subject himself to the authority, the political authority of the board of supervisors. It's not something that once he's there, he's there during his term of good behavior, if you will. He's there from year to year, and I assume he knows if he ticks off one or both of the board of supervisors, members of the board of supervisors, he may not get reappointed when his term comes up next time. Well, I think that is true. Many people who work in the township, and also it's a small township, many people report to the board of supervisors. The board of supervisors is the boss, the governing authority, so that isn't going to work out very well in Pocono Township. Is the board of supervisors still a member of the board today? Is he still a member of the board today? He has been elected and elected and elected four times. There is no board of supervisors, as counsel said. He is a commissioner, one of the five commissioners. He was elected both to a two-year term and a four-year term at the same election. He's got a lot of juice. And that is the point. There was no reason to terminate him as roadmaster because he was highly qualified. Thirteen years, he had a high-level license from PennDOT, which allowed him to operate sophisticated, complicated machinery, and he was doing a good job as roadmaster. And as I said in my opening argument, what he was talking about that caused him to be fired had nothing to do with how he was running the road department or anything related to the road department. How did being fired as roadmaster affect his ability to do his job as supervisor? It's unrelated. He continued to do his job as supervisor. Actually, I don't know whether this is on the… You may have just spun the trap door in the floor that you dropped the handkerchief. You're saying it didn't, and it's pretty clear that's correct, that he could still function as a supervisor. He's now a commissioner, but he continued to be a supervisor throughout 2012. But I would make the analogy… I don't think this court can… The red light that just came on, it means the same thing as earlier, so I have to cut you off. But again, if you want to add anything to your position that you didn't have time to, send us a 28-J letter, a letter under Rule 28-J. And also, let me ask you both to submit that factual thing, because that's important, I think, to clarify that. In terms of the history of the roadmaster, how many of them have been consistently boarded? Just list who was a roadmaster who was not a member of the Board of Supervisors, if there have been any. If you agree on that, it's better. If not, just send us the names. There are, of course, many second-class townships in Pennsylvania. But we're only really concerned right now about Pocono Township. Thank you very much.